IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Bernard N. Nono,** | * | |
| 11632 Stewart Lane, Apt 301 | * | |
| Silver Spring, MD 20904 | * | |
| | * | |
| Plaintiff; | * | |
| | * | |
| v. | * | |
| | * | Civil Action No.: _____ |
| | * | |
| **The George Washington University,** | * | JURY TRIAL DEMANDED |
| 2121 Eye Street, NW. | * | |
| Washington, DC 20052 | * | |
| | * | |
| Defendant. | * | |
| **Serve on:**   **Beth Nolan,** | * | |
| Office of the Senior Vice | * | |
| President and General Counsel | * | |
| 2100 Pennsylvania Avenue, N.W. | * | |
| Suite 250 | * | |
| Washington, DC 20052 | * | |
| | * | |
| | * | |

---

## VERIFIED COMPLAINT

Plaintiff, Bernard N. Nono ("Mr. Nono"), by his Attorney, Joseph M. Fah Esq.,

brings this action against Defendant, The George Washington University ("GWU"), and

states as follows:

## INTRODUCTION

Mr. Nono, a native of Cameroon and now United States Citizen, was employed by GWU as security officer from 2005 to 2013. In 2012, Mr. Nono was charged with driving while impaired by alcohol ("DWI"). GWU suspended him pending investigation, confiscated his security officer's license, and promise him in writing that he will be reinstated upon complete adjudication of his case. In 2013, GWU terminated him, before the case could be completely adjudicated. Mr. Nono reapplied for the same position after he successfully challenged his case in court. GWU refused to hire him.

During this time, two white GWU officers—all born in the United States—had their licenses suspended. GWU did not suspend or terminate them.

What is more, another GWU officer—born in the United States—was involved in a terrible car crash and was charged with driving under the influence of alcohol ("DUI"). She was neither suspended nor terminated.

Finally, while GWU was refusing to hire Mr. Nono because of the DWI charge, it was hiring another far less qualified candidate—born in the United States— who entered a guilty plea to a charge of DUI per se.

Mr. Nono seeks redress of this humiliation.


## NATURE OF THE ACTION

1.  Mr. Nono brings this action for employment discrimination to seek appropriate relief for the unlawful employment practices he was subjected to by GWU. As fully set forth

below, Mr. Nono states that GWU unlawfully discriminated against him because of his race and national origin, in violation of his rights as guaranteed under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§2000e, *et seq.* and 1981a.

2. Mr. Nono further brings this action for breach of employment contract to seek appropriate relief for the damages he suffered because of the breach.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over Mr. Nono's claims pursuant to 28 U.S.C. §§ 1331 and 1332. This is a civil action between citizens of different states and the amount in controversy exceeds $75000, exclusive of interest and costs. This Civil action also involves a claim under federal law, specifically Title VII.

4. Venue properly lies in this Court because the acts described herein occurred in the District of Columbia and Defendant's Principal place of business is in the District of Columbia.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. On October 7, 2014, Mr. Nono timely filed a complaint for unlawful discrimination with the Equal Employment Opportunity Commission ("EEOC").

6. On July 1, 2015 the EEOC transferred Mr. Nono's case to the District of Columbia Office of Human Rights ("DCOHR").

7. On December 22, 2015—more than one hundred eighty days (180)—since Mr. Nono filed his administrative complaint with the EEOC, Mr. Nono requested a Notice of Rights to Sue Letter from the DCOHR.

8. On December 24, 2015, the DCOHR issued a letter of administrative dismissal of Mr. Nono's complaint.

9. The letter allows Mr. Nono to proceed to federal Court. A Copy of this letter is attached and prayed to be read as part hereof as Exhibit 1.

10. On March 17, 2016, within ninety (90) days of receiving the letter, Mr. Nono commenced this action against Defendant.

## PARTIES

11. At all relevant times, Mr. Nono was resident of the state of Maryland.

12. Mr. Nono is an adult male.

13. Mr. Nono's national origin is Cameroon.

14. Mr. Nono's race is Black.

15. Mr. Nono was Defendant's employee.

16. Mr. Nono is within the protected class under Title VII.

17. Defendant is a non-profit corporation incorporated in the District of Columbia.

18. Defendant's principal place of business is in the District of Columbia.

19. Defendant employs more than 500 employees.

## STATEMENT OF FACTS

**A. Mr. Nono's unblemished record at GWU**

20. Mr. Nono began his career at GWU in November 2005.

21. He started as a security officer in the GWU Police Department ("GWUPD").

22. That same year, Dolores A. Stafford ("Ms. Stafford")—then Chief of Police—presented Mr. Nono with the "Chief's award for exceptional performance of Duty".

23. That same year, Ms. Dolores also awarded him the "Medal of Achievement".

24. In 2005, Mr. Dolores presented Mr. Nono with the "Language Award".

25. In 2007, Ms. Dolores presented Mr. Nono with the "Best Attendance Award for A shift for 2006".

26. In 2008, Ms. Stafford presented Mr. Nono with the "Security Officer/Dispatcher of the Year Award for 2007".

27. In 2008, Ms. Stafford presented Mr. Nono with the "Best Attendance Award for A shift for 2007".

28. In 2008, Ms. Stafford presented Mr. Nono with the "Professional Appearance Award, A shift for the year 2008".

29. In 2008, prior to leaving the GWUPD, Ms. Stafford appointed Mr. Nono to the position of "Senior Security Officer", effective August 10, 2008.

30. In 2009, James Isom ("Mr. Isom")—then assistant chief of Police—presented Mr. Nono with the "Medal of Good Conduct for the year 2008"

31. In 2010, Mr. Isom presented Mr. Nono with the "Medal of Good Conduct for the year 2009"

**B. Mr. Nono's sudden termination**

32. In 2010, GWU hired Mr. Kevin Hay as the new GWU Police Chief.

33. During the years 2010, 2011, and 2012, Mr. Nono continued to perform his duties with the same dedication, if not more, as he did under the reign of Ms. Dolores.

34. During the years 2010, 2011, and 2012, Mr. Nono was not disciplined.

35. During the years 2010, 2011, and 2012, Mr. Nono received no award from the GWUPD.

36. In the night of April 1, 2012, Mr. Nono was involved in a car accident and as a result, he was arrested and charged with Driving a vehicle While Impaired by alcohol ("DWI"), and then released the same night.

37. While he was still in custody, Mr. Nono immediately contacted the GWUPD to report this incident.

38. In the morning of April 2, 2012, Mr. Demes—then Assistant Chief of Police— suspended Mr. Nono, pending investigation.

39. Mr. Demes confiscated Mr. Nono's security officer's license; his locker room keys; his GWU staff identification card ("GWorld card"); and instructed him "not to be in the workplace".

40. Mr. Demes further informed Mr. Nono that his security officer's license will remained confiscated "until the adjudication of [his] case is completed and [he] present those results to the Security Officer Management Branch."

41. Mr. Nono was shocked because of these extremes measures; he became very depressed; and contemplated suicide.

42. Throughout the period of his suspension, Mr. Nono consistently emailed Mr. Hay to inquire about the status of the investigation and to update Mr. Hay about the DWI charge pending against him.

43. On December 03, 2012 Mr. Nono went on trial in the District Court of Maryland for the Montgomery County.

44. After trial, Mr. Nono was granted a Probation Before Judgment ("PBJ")—for the DWI charge—and placed on 12 months unsupervised probation.

45. Mr. Nono immediately informed Mr. Hay of the trial court's decision.

46. Yet, Mr. Hay did not reinstate him.

47. Mr. Hay informed Mr. Nono that he needed to obtain his Security Officer's license from the Security Officers Management Branch ("SOMB") of the Metropolitan Police Department ("MPD"), before he could be reinstated.

48. Mr. Nono then applied for another security officer's license with the SOMB.

49. But, SOMB denied this application.

50. On January 11, 2013, Mr. Nono challenged SOMB's decision.

51. On April 4, 2013, the District of Columbia Office of Administrative Hearings ("OAH") heard Mr. Nono's appeal.

52. On May 1, 2013—while Mr. Nono was waiting the OAH's decision—the GWUPD unexpectedly terminated Mr. Nono from all employment with the Defendant.

53. Mr. Nono was never informed of the results of the GWUPD's investigations.

54. To date, Mr. Nono still has not heard anything regarding the investigation initiated on April 2, 2012.

55. Mr. Nono was terminated despite his numerous supplications to the GWUPD to—at the

very least—honored the promise Ms. Demes made to him in the notice of suspension.

56. On August 2, 2013, the OAH found for Mr. Nono, reversed SOMB's decision, and

ordered the MPD to issue a security officer's license to Mr. Nono by August 5, 2013.


**C. Mr. Nono reapplied for the position of Security Officer with the GWUPD**

57. On August 21, 2013, Mr. Nono reapply for the position of Security Officer with the

GWUPD.

58. The GWUPD found Mr. Nono qualified for the position of Security Officer.

59. On October 24, 2013, the GWUPD interviewed Mr. Nono.

60. After the interview, Defendant conducted a background check on Mr. Nono.

61. This background check showed that Mr. Nono was granted PBJ for DWI in the State of

Maryland.

62. On December 3, 2013, Defendant contacted Mr. Nono and informed him of the result

of the background check.

63. As a condition for employment, Defendant requested that Mr. Nono signed a written

letter in which he agreed to "commit no further offenses" and to submit to "an annual

criminal history check up to 7 years from the conviction date".

64. Additionally, Defendant requested that Mr. Nono submit proof that he has completed

his probation in Montgomery County.

65. Mr. Nono signed the letter and submitted it to Defendant.

66. On December 13, 2013, Mr. Nono submitted evidence that he has satisfactorily completed his probation in Montgomery County.

67. On December 20, 2013, Defendant acknowledged receipt of both documents.

68. On January 29, 2014, Defendant—yet again—contacted Mr. Nono and requested that he submit proof that he had no pending legal action against him.

69. That same day, Mr. Nono faxed the requested document to Defendant.

70. Thereafter, Mr. Nono consistently call Defendant to obtain an update on his application for employment.

71. Defendant never answer or returned Mr. Nono's calls.

72. Mr. Nono continued to call.

73. In May 2014, finally, Mr. Nono was able to speak with William Leung, Defendant's employee.

74. Mr. Leung asked Mr. Nono whether he has spoken with "Chief Hay".

75. Mr. Nono said no.

76. And Mr. Leung said he was going to call him back.

77. At the time of this complaint, Mr. Nono has yet to receive Mr. Leung's call.

78. Mr. Nono is not employed by the Defendant.

79. Since August 2013, Defendant has hired employees less qualified than Mr. Nono.

80. Since August 2013, Defendant has hired or maintained employees whose background check revealed far more egregious information than what is reported on Mr. Nono's background check.

**D. Defendant treated Mr. Nono differently: let's face it.**

**Defendant's employee arrested for DUI but kept on the job**

81. Until late 2015, Lamika Joseph ("Ms. Joseph") was Defendant's employee.

82. She worked as security officer with the GWUPD.

83. Ms. Joseph is a United States Citizen.

84. She was born in the United States.

85. On August 18, 2013, Ms. Joseph was involved in a car accident and sustained severe
damages.

86. As a result of this accident, Ms. Joseph was charged with Driving While Under the
Influence of Alcohol ("DUI") in Maryland.

87. While Ms. Joseph's case was pending adjudication in Maryland State Court, Defendant
continue to employ and pay Ms. Joseph.

88. Defendant did not suspend Ms. Joseph while her DUI case was ongoing in Maryland.

89. Defendant did not terminate her either.

90. On June 13, 2014, she entered a guilty plea and received a PBJ.

91. Nonetheless, she continued to maintain gainful employment with Defendant.

92. Defendant terminated Ms. Joseph in 2015.

93. Defendant terminated Ms. Joseph only after Mr. Nono complained about this disparate
treatment.

**Defendant's employees with revoked licenses kept on the job**

94. As ground for Mr. Nono's termination, Mr. Hay stated that the GWU was "compelled to
terminate" Mr. Nono's employment because his arrest and the subsequent revocation of

his security officer license led to his inability to comply with section 28.11 of the

Collective Bargaining Agreement, which essentially states that:

> Employees shall be required to comply with all legal requirements applicable to
> the performances of their functions, including but not limited to any licensing
> requirements imposed by the District of Columbia.

95. Jeffrey Kerch ("Mr. Kerch") and Christopher Brown ("Mr. Brown") are Defendant's

employees, working with the GWUPD.

96. Mr. Kerch's race is White.

97. Mr. Brown's race is White.

98. They are both United States Citizens, born in the United States.

99.  Mr. Kerch and Mr. Brown had their licenses revoked by the SOMB.

100.    SOMB revoked Mr. Brown and Mr. Kerch's commissions because they expanded

their arrest power, in violation of SOMB's regulations.

101.    This revocation placed them in the same status as was Mr. Nono when Defendant

terminated him.

102.    Specifically, because of the revocation of their respective licenses, they were in

violation of the very section of the Collective Bargaining Agreement upon which Mr.

Hay rested his decision to terminate Mr. Nono.

103.    Nonetheless, they continued to maintain gainful employment with Defendant.

104.    Mr. Kerch and Mr. Brown were neither suspended nor terminated.

**Defendant's refused to hire Mr. Nono because of the minor DWI charge, but hired a far less qualified, United States born citizen found guilty of DUI per se.**

105.   Derrick Hemphill ("Mr. Hemphill") is Defendant's employee, working with the GWUPD.

106.   Mr. Hemphill is a United States Citizen.

107.   He was born in the United States.

108.   On February 2, 2007, Mr. Hemphill was arrested in Maryland and charged with Driving a vehicle while under the influence per se ("DUI per se").

109.   Defendant hired Mr. Hemphill after August 2013.

110.   Mr. Hemphill has far less security experience than Mr. Nono.


## FIRST CLAIM FOR RELIEF

### (Unlawful Employment Discrimination: termination Based on National Origin)

111.   Plaintiff repeats the allegations set forth in paragraph 1 through 110 as if fully set forth herein.

112.   Mr. Nono asserts that other Defendant's similarly situated employees, not within his protected class of discrimination, who have committed far more egregious conducts or errors were not unfairly treated, disciplined, suspended, or terminated by the Defendant.

113.   Mr. Nono further asserts that similarly situated employees not within his protected class of discrimination were not exposed and humiliated like him and were not subjected to the same unlawful employment conditions as he was.

114.   Defendant's disparate actions were intentional and based on Mr. Nono' national origin.

115.    Based on the foregoing, Mr. Nono asserts that Defendant has discriminated against

him because of his national origin in violation of Title VII, by among others thing,

discriminating against him in the terms, conditions, and privileges of his employment

with Defendant.

116.    As a proximate result of Defendant's discriminatory actions, Mr. Nono has suffered

losses in compensation, earning capacity, humiliation, mental anguish, loss of enjoyment

of life, and extreme and severe emotional distress.

117.    Defendant's unlawful actions, as described in this complaint, were intentional, willful,

and done with reckless disregard for Mr. Nono's rights and feelings.

118.    Mr. Nono requests relief as described below in his prayer for reliefs.


## SECOND CLAIM FOR RELIEF
### (Refusal to Hire based on National Origin)

119.    The allegation set forth in paragraphs 1 through 110 are incorporated herein as fully
set forth.

120.    Mr. Nono asserts that he is a member of a protected class as defined under Title VII.

121.    Mr. Nono further asserts that he applied for the position of Security Officer with the

Defendant.

122.    Mr. Nono asserts that was qualified for the position—indeed Defendant interviewed

him.

123.    Mr. Nono states that Defendant refused to hire him.

124.    Mr. Nono states that Defendant awarded the position to people outside of his

protected class who were otherwise similarly situated.

125.   Defendant's disparate actions were intentional and based on Mr. Nono's national

origin.

126.   Based on the foregoing, Mr. Nono asserts that Defendant has discriminated against

him because of his national origin in violation of Title VII, by among others thing,

discriminating against him in the terms, conditions, and privileges of his employment

with Defendant.

127.   As a proximate result of Defendant's discriminatory actions, Mr. Nono has suffered

losses in compensation, earning capacity, humiliation, mental anguish, loss of enjoyment

of life, and extreme and severe emotional distress.

128.   Defendant's unlawful actions, as described in this complaint, were intentional, willful,

and done with reckless disregard for Mr. Nono's rights and feelings.

129.   Mr. Nono requests relief as described below.


### THIRD CLAIM FOR RELIEF
### (Breach of Contract)

130.   The allegation set forth in paragraphs 1 through 110 are incorporated herein as fully

set forth.

131.   When Defendant suspended Mr. Nono, it informed him in writing, that he will

remain suspended "until the adjudication of [his] case is complete and [he] present those

results to the Security Officer Management Branch".

132.   Defendant's communication created an irrevocable offer to keep Mr. Nono

suspended, which Mr. he could only accept by complying with the terms of the offer.

133.   Defendant had the obligation to keep Mr. Nono suspended until his case was complete and he presented the results to SOMB.

134.   Mr. Nono accepted Defendant's offer by obtaining a complete adjudication of his case and by presenting the results to the SOMB, thereby creating a valid and enforceable contract.

135.   Defendant terminated Mr. Nono before the complete adjudication of his case.

136.   In terminating Mr. Nono, as it did, Defendant breached the contract he had with Mr. Nono.

137.   As a direct and proximate result of Defendant's conduct, Mr. Nono incurred damages in the total amount $225,000.0

138.   Mr. Nono requests relief as described below in his prayer for relief.

## FOURTH CLAIM FOR RELIEF

### (Breach of Implied Covenant of Good Faith and Fair Dealings)

139.   The allegation set forth in paragraphs 1 through 110 are incorporated herein as fully set forth.

140.   Defendant was required to take no action that will injure Mr. Nono's rights under the contract.

141.   In breaching the agreement, it had with Mr. Nono, Defendant acted to injure Mr. Nono's rights under that contract.

142.   As a direct and proximate result of Defendant's conduct, Mr. Nono has incurred damages in the total amount of $225,000.0

143.    Mr. Nono requests relief as described below in his prayer for relief.

## FIFTH CLAIM FOR RELIEF
### (Promissory Estoppel)

144.    The allegation set forth in paragraphs 1 through 110 are incorporated herein as fully

set forth.

145.    When Defendant suspended Mr. Nono, it stated that Mr. Nono will remain

suspended "until the adjudication of [his] case is complete and [he] present those results

to the Security Officer Management Branch".

146.    In making this clear and indefinite promise, Defendant knew, or had reasons to know

that Mr. Nono would take whatever action was necessary to achieve the complete

adjudication of his case.

147.    Reasonably relying on Defendant's promise that he will not be terminated before the

complete adjudication of his case, Mr. Nono invested his time and money litigating the

revocation of his license.

148.    On August 4, 2013, the Court ordered SOMB to reinstate Mr. Nono, but by the time

of this court order, Defendant had already terminated Mr. Nono.

149.    In terminating Mr. Nono, as it did, Defendant breached the promise it made to Mr.

Nono.

150.    As a direct and proximate result of Defendant's conduct, Mr. Nono, to his detriment,

incurred extraordinary expenses in the approximate amount of $4500.0, which he would

have never incurred but for Defendant's promise to keep him on the Job during the

stated time.

151.   Detriment to Mr. Nono can only be avoided by enforcing Defendant's promise.

152.   Mr. Nono requests relief as described below in his prayer for relief.

### SIXTH CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress)

153.   The allegations set forth in paragraphs 1 through 110 are incorporated herein as if
fully set forth.

154.   Defendant engaged in a continuous pattern of systemic conduct intentionally
engineered to violate Mr. Nono's rights.

155.   Defendant's conduct of immediately suspending and later terminating Mr. Nono's
employment, confiscating his license, and denying him all access onto Defendant's
properties, were intentional, reckless, and deliberate disregard of high degree of
probability that emotional distress would result to Mr. Nono.

156.   The aforesaid conduct by Defendant was extreme, outrageous, and beyond the
bounds of decency of this civilized society.

157.   As a result of the aforesaid conduct, Mr. Nono contemplated suicide on many
occasions, he suffered and will continue to suffer, severe and extreme emotional distress.

### PRAYER FOR RELIEF

WHEREFORE, Mr. Nono respectfully requests this Court to grant the following relief:

A.   Declare that Defendant has discriminated against Plaintiff in violation of his rights as
guaranteed by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, and 42
U.S.C. §1981a.

B. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from maintain employment practices, which discriminated on the basis of race, national origin, or any other prohibited protected class.

C. Order Defendant to institute and carry out policies, practices, and programs, which provide equal employment opportunities for Africans, foreign national, and which eradicate the effects of its past and present unlawful employment practices.

D. Order Defendant to make whole Mr. Nono by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described herein, in the total amount of $300,000.0

E. Order Defendant to pay back pay resulting from the unlawful employment practices described herein, in the total amount of $225, 000.0 plus interest.

F. Order Defendant to make whole Mr. Nono by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained herein, including emotional pain, emotional distress, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights, in the total maximum amount allowed by law.

G. Award Mr. Nono compensatory damages in the total amount of $1, 200, 000.0 for breach of contract.

H. Award Mr. Nono compensatory damages in the total amount of $1, 200, 000.0 for breach of an enforceable promise.

I.   Order Defendant to pay Mr. Nono exemplary punitive damages for its intentional unlawful actions, as described herein, in the total amount to be determined at trial.

J.   Grant plaintiff reasonable costs and Attorney's fees, as specified under Title VII.

K.   Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

Plaintiff hereby requests a jury trial on all questions of fact raised by his complaint.

## VERIFICATION

I, Bernard N. Nono, declare under the penalty of perjury that the foregoing is true and correct.

Executed this 17th day of March 2016.

/s/ Bernard N. Nono
_____

Bernard N. Nono

This 17th day of March, 2016.

Respectfully Submitted,

/s/ Joseph M. Nde Fah
_____

Joseph M. Nde Fah, Esq.
FAH | LAW GROUP, P.C.
8605 Cameron Street Suite 214
Silver Spring MD 20910
T: 301 585 3314
P: 301 585 0854
jfah@fahlawgroup.com
**Attorney for Plaintiff**

 Government of the District of Columbia
Mayor Muriel E. Bowser

 **Office of Human Rights**
GOVERNMENT OF COLUMBIA

One Judiciary Square
441 4th Street NW, Suite 570N
Washington, DC 20001
202 727 4559 tel
202 727 9589 fax
ohr.dc.gov

DECEMBER 24, 2015

BERNARD NONO
C/O JOSEPH NDE FAH, ESQ.
8605 CAMERON STREET SUITE 214
SILVER SPRING, MD 20910
JNDEFAH@LAW.GWU.EDU

THE GEORGE WASHINGTON UNIVERSITY
C/O LYNN WHITE, EEO ASSOCIATE
2121 EYE STREET NW SUITE 101
WASHINGTON, DC 20052
LWHITE14@GWU.EDU

*Complainant*                    *Respondent*

**OHR No.:**   15-763 PCNTR
**EEOC No.:**  531-2015-00099
**HUD No.:**   N/A

*Dear Parties:*

*This letter constitutes the Office of Human Rights' (OHR) ORDER for administrative dismissal without prejudice regarding the above referenced matter.*

Pursuant to the District of Columbia Municipal Regulations, Title IV, Chapter 1 and 7, §§107 and 708, this case has been terminated without prejudice for the following administrative reasons:

☑ The complainant has submitted a written request to withdraw the complaint. D.C. Mun. Regs. Tit. 4 §107.1; §708.1.

☐ The OHR cannot contact the complainant using the contact information of record and the complainant has not contacted OHR as required. D.C. Mun. Regs. Tit. 4, §107.1(a); §708.1(a)(b).

☐ The complainant fails to state a claim for which relief can be granted. D.C. Mun. Regs. Tit. 4, §107.1(b); §708.1(c).

EXHIBIT 1

☐ The respondent no longer exists as a result of a court action. D.C. Mun. Regs. Tit. 4 § 107.1(c); §708.1(d)

☐ OHR lacks jurisdiction over the respondent. D.C. Mun. Regs. Tit. 4 §107.1(d); §708.1(e).

ON DECEMBER 22, 2015, THROUGH COUNSEL, COMPLAINANT SUBMITTED A WRITTEN REQUEST FOR A NOTICE OF RIGHT TO SUE LETTER.

A request to reopen an administratively dismissed complaint must be submitted to the OHR Director, 441 4th Street, NW, Washington, DC 20001 within thirty (30) days of the date of this letter. A complaint may be reopened by the OHR Director for good reason or in the interest of justice, based on the Director's discretion, if no determination has been made on the merits of the complaint. If Complainant does not submit a request to reopen within thirty (30) days, this letter constitutes OHR's final decision which can be appealed to the Superior Court of the District of Columbia by filing a "Petition for Review." A District of Columbia government employee or applicant must appeal OHR's decision to the Superior Court of the District of Columbia within thirty (30) days of this letter, or within thirty (30) days of the OHR decision on a request to reopen, whichever is later. Complainants who are not D.C. government employees or applicants have three (3) years from the date of the OHR decision to file a "Petition for Review" in the Superior Court of the District of Columbia.

Sincerely,

Mónica Palacio,
Director