UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BERNARD NONO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 16-533 (RJL) |
| ) | |
| THE GEORGE WASHINGTON ) | |
| UNIVERSITY, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION
(March 28, 2017) [Dkt. # 13]

**FILED**
MAR 29 2017
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Plaintiff Bernard Nono ("plaintiff" or "Nono") brings this action against The George Washington University ("GWU" or "defendant"). Nono is a former GWU Police Department ("GWUPD") security officer who was suspended and terminated after he was charged with driving while impaired by alcohol (DWI). In his Amended Complaint, Nono asserts that GWU engaged in racial and national origin discrimination when it terminated and refused to rehire him, and brings additional claims alleging promissory estoppel and intentional infliction of emotional distress. Am. Compl. ¶¶ 114–146 [Dkt. # 11]. Currently before the Court is GWU's Partial Motion to Dismiss the Complaint for failure to state a claim upon which relief can be granted. [Dkt. # 13]. For the reasons stated below, I GRANT the Partial Motion to Dismiss the Complaint.

BACKGROUND

In his Amended Complaint, Nono alleges that he is a black male and native of Cameroon who is now a United States citizen. Am. Compl. at 2, ¶¶ 16–17. Nono

worked as a GWUPD security officer from November 2005 until April 2012. *Id.* ¶¶ 23, 41, 55.

On April 1, 2012, Nono was involved in a car accident and was charged with driving a vehicle while impaired ("DWI"). *Id.* ¶ 39. Nono reported the accident to GWUPD, and on April 2, 2012, he was suspended "pending an investigation regarding [his] conduct." *Id.* ¶¶ 40–41; 04/02/12 Suspension Letter [Dkt. #13-3]. As a result of his suspension, Mr. Nono was required to surrender his security officer's license, his locker room keys, and his identification card, and was instructed to stay away from his workplace. Am. Compl. ¶ 42. In December 2012, Mr. Nono's DWI charge went to trial in the District Court of Maryland for Montgomery County, where he received a probation before judgment ("PBJ") and 12 months unsupervised probation. *Id.* ¶¶ 46–47.

Mr. Nono alleges that at some point during this period, GWUPD Police Chief Kevin Hay told him he needed to get a new security license from the Metropolitan Police Department's Security Officer's Management Branch ["SOMB"] before he could be reinstated. *Id.* ¶ 50. He applied for a new license, but the SOMB denied his application. *Id.* ¶¶ 51–52.

On May 1, 2013, GWUPD terminated Nono. *Id.* ¶ 55. In August 2013, after Nono was terminated, D.C.'s Office of Administrative Hearings overturned the SOMB's decision on appeal and ordered the SOMB to reinstate Nono's security license. *Id.* ¶¶ 54, 59. Nono therefore re-applied for a GWUPD security officer position. *Id.* ¶ 60. He

was interviewed in October 2013 but he was never hired. *Id.* ¶¶ 62, 81.

Nono alleges that both his termination and GWUPD's refusal to rehire him were the result of racial and national origin discrimination. With respect to his termination, he alleges that GWUPD has failed to suspend or terminate other security officers, including two white officers, who were charged with DUIs or had their security licenses revoked. *Id.* ¶¶ 84–107. As to the refusal to rehire him, Nono asserts that GWUPD "has hired employees, including white [c]itizens, less qualified than [him]" and "has hired or maintained employees whose background check revealed far more egregious information than" Mr. Nono's DWI charge. *Id.* ¶¶ 82–83.

Nono filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on October 7, 2014. *Id.* ¶ 6. He instituted this action on March 21, 2016. Compl. [Dkt. #1].

## STANDARD OF REVIEW

When deciding a motion to dismiss for failure to state a claim, the Court must ascertain whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The Court must read the complaint's factual allegations in the light most favorable to the plaintiff, *Bell Atlantic Co v. Twombly*, 550 U.S. 544, 555 (2007), but the Court is not required to accept "a legal conclusion couched in the form of a factual allegation" or "threadbare recitals of a cause of action's elements,

supported by mere conclusory statements." *Iqbal*, 556 U.S. at 679. Furthermore, a claim that is rooted in a faulty legal theory must be dismissed, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Nietzke v. Williams*, 490 U.S. 319, 327 (1989).

At the motion to dismiss stage, "the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

## ANALYSIS

### I. Count I Must Be Dismissed in Part as Time-Barred.

In Count I of his Amended Complaint, Nono asserts that his May 1, 2013 termination was the result of discrimination on the basis of his race and his national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. § 1981. Unfortunately for Nono, he is time-barred from raising a Title VII claim that challenges his termination. Title VII requires that an administrative charge be filed within 180 days "after the alleged unlawful employment practice occurred" or within 300 days if "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice." 42 U.S.C. § 2000e–5(e)(1). Nono was therefore required to file an administrative charge within at least 300 days of his termination. Instead, he alleges that he filed a

discrimination charge on October 7, 2014, approximately 525 days after GWUPD terminated him. Am. Compl. ¶ 6.

Nono attempts to sidestep the time bar by (1) arguing that the charge was filed within 300 days of the last act of discrimination and (2) asking the Court to equitably toll the limitations period because GWU "intentionally derailed [his] steps to toward the EEOC office." Pl.'s Opp'n to Mot. to Dismiss at 5–7 [Dkt. # 15-1]. Unfortunately, both arguments are unavailing. First, it is irrelevant as a matter of law that Nono's charge was filed within 300 days of the last alleged act of discrimination. Nono is alleging that two discrete actions—his termination in 2013 and GWU's refusal to rehire him in 2014—were unlawfully discriminatory. The Supreme Court has clearly stated that Title VII plaintiffs must file charges that are timely as to each discrete alleged discriminatory act, and prior discriminatory acts that occurred outside the time period are not actionable. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112–16 (2002) ("[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period."). Nono did not file an EEOC charge within 300 days of his termination, and he cannot now bootstrap an untimely termination-related claim because he filed a timely charge with respect to the 2014 refusal to rehire him.

Second, I find that the circumstances of this case do not warrant equitable tolling of the statute of limitations. As our Circuit Court has stated, the "equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully

5

circumscribed instances." *Smith–Haynie v. District of Columbia*, 155 F.3d 575, 579–80 (D.C. Cir. 1998). Under the law of our Circuit, a plaintiff is only entitled to equitable tolling if he has been "pursuing [his] rights diligently" and some "extraordinary circumstance stood in [his] way and prevented timely filing." *Dyson v. D.C.*, 710 F.3d 415, 418 (D.C. Cir. 2013). Nono simply alleges that he sought re-employment after this termination[1] and waited to file a discrimination charge until after he knew he was not going to be rehired; these allegations do not constitute "extraordinary circumstances" preventing him from timely challenging his termination.

In its motion, GWU also argues that Nono cannot bring a § 1981 claim that is based on national origin discrimination. Partial Mot. to Dismiss Am. Compl. at 6 (citing *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (stating that 42 U.S.C. § 1981 does not protect individuals against discrimination based "solely on the place or nation of [] origin")). Nono represents that he has not asserted a national original claim under § 1981. Pl.'s Opp'n to Defs.' Partial Mot. to Dismiss at 6. Thus, Nono's Count I § 1981 claim going forward is limited to a racial discrimination claim.

Count I must be partly dismissed, and will continue only as a claim that Nono was

---

[1] Nono claims in his response that GWU promised to rehire him to keep him from filing a timely charge. Opp'n to Mot to Dismiss at 5. He includes no concrete allegations to support this claim; he does not allege who made the promise and does not identify any communication where the promise was made. More importantly, the Amended Complaint does not mention this promise, and a plaintiff cannot modify his complaint in the briefs of a motion to dismiss. *Malloy v. Ass'n of State & Territorial Solid Waste Mgmt. Officials*, 955 F. Supp. 2d 50, 56–57 (D.D.C. 2013). Even if GWU made such a promise, it would not constitute an "extraordinary circumstance" prohibiting him from filing a timely EEOC charge.

terminated as a result of racial discrimination, in violation of 42 U.S.C. § 1981.

## II. Count II Must Be Dismissed in Part for Failure to State a Claim.

In Count II, Nono alleges that GWU refused to rehire him because of racial and national origin discrimination, in violation of Title VII and 42 U.S.C. § 1981. Nono's Amended Complaint, however, includes no allegations that would support a claim of racial discrimination in the refusal to rehire him, and Count II must be dismissed insofar as it is premised on alleged racial discrimination.

Nono points to two statements in his Amended Complaint to support his claim that GQU committed racial discrimination when it refused to rehire him—his assertion that GWU "has hired employees, including white [c]itizens, less qualified than Mr. Nono" and his allegation that GWUPD hired Derek Hemphill, a U.S. citizen who was born in the United States and was charged with driving a vehicle while under the influence per se ("DUI per se"). Am. Compl. ¶¶ 108–11. The first statement is a threadbare, conclusory statement that the Court need not accept as true, and the reference to Hemphill makes no reference whatsoever to his race and thus cannot be used to support a claim of racial discrimination.

Mr. Nono's allegation regarding Hemphill does state that he is a native-born United States citizen, unlike Mr. Nono, which would support a claim that GWUPD refused to rehire Nono on the basis of national origin discrimination. However, as previously discussed above, 42 U.S.C. § 1981 does not protect against national origin

7

discrimination. As a result, Count II must be partly dismissed and will only continue as a claim that Nono was not rehired as a result of national origin discrimination, in violation of Title VII.

### III. Count III is Preempted by Federal Labor Law and Must Be Dismissed.

In Count III, Nono alleges that GWU informed him that he would remain suspended "until the adjudication of [his] case is complete and [he] present[ed] those results to the Security Officers Management Branch." Am. Compl. ¶ 134, 04/02/12 Suspension Letter. Nono construes this statement as a "clear and definite promise" to refrain from terminating him until the "complete adjudication of his case." *Id.* ¶¶ 135–136. He alleges that he relied to his detriment on this promise by litigating the revocation of his license with the SOMB, and that GWU breached the promise by terminating him in May 2013, constituting promissory estoppel under D.C. law.

Whether or not Nono has sufficiently pleaded facts that would state a promissory estoppel claim, his claim must be dismissed because it is preempted by federal law. Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, provides federal jurisdiction over controversies involving collective bargaining agreements and preempts state law claims that "require[] the interpretation of a collective-bargaining agreement" or are "substantially dependent upon analysis of the terms of a labor agreement." *Lingle v. Norgle Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).

8

Here, a key element of Nono's promissory claim is whether GWU appropriately terminated Nono in May 2013. In his Amended Complaint, Nono alleges that GWUPD Chief Kevin Hay invoked Section 28.11 of the GWUPD security officers' Collective Bargaining Agreement ("CBA") as grounds for his termination. Am. Compl. ¶ 97. That provision requires employees to comply with all "legal requirements applicable to the performance of their functions, including . . . any licensing requirements imposed by the District of Columbia." *Id.* As GWU points out, any state law promissory estoppel claim would necessarily require interpretation of the CBA. For example, I would likely have to determine the terms under which GWUPD could terminate Nono, GWUPD's ability to make a binding agreement with Nono that superseded or altered the terms of the CBA, whether the CBA provided a defense to Nono's state law claim, and/or whether Nono could reasonably rely on a promise that GWU made outside the context of the CBA. As such, Nono's state law promissory estoppel claim is preempted and must be dismissed. Therefore, Count III is dismissed in full.

## IV.   Count IV Must Be Dismissed for Failure to State a Claim.

Count IV alleges that GWU's "conduct of immediately suspending and terminating [his] employment, confiscating his license, and denying him all access onto defendant's properties" constituted intentional infliction of emotional distress ("IIED"). Am. Compl. ¶ 144.

Under D.C. law, an IIED[2] claim requires (1) extreme and outrageous conduct that (2) intentionally or recklessly (3) causes severe emotional distress. *Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023, 1037 (D.C. 2015). In order to constitute "extreme and outrageous conduct", the alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*; *see also Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. D (1965) (stating that an IIED claim arises when "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'")).

Nono's allegations fall remarkably short of that high standard. Nono alleges that GWU's decisions to suspend him, confiscate his security license and keys, prohibit him

---

[2] Though defendants cite D.C. cases, the parties never explicitly assert which state's law should govern the IIED claim. *See* Partial Mot. to Dismiss at 13–17 [Dkt. #13-1]. Nevertheless, I can easily discern that D.C.'s substantive tort law governs. Federal courts follow the choice of law rules of the forum state in which they sit, *Ideal Electronic Co. v. Int'l Fidelity Ins. Co.*, 129 F.3d 143, 148 (D.C. Cir. 1997), and D.C. courts utilize a blended "governmental interests analysis"/"most significant relationship" test to determine which state's substantive law applies. *Oviessi v. Islamic Republic of Iran*, 573 F.3d 835, 842 (D.C. Cir. 2009). Under this test, the court should identify the governmental policies underlying the applicable laws and determine which jurisdiction's policy is most advanced by having its own law applied. *Stutsman v. Kaiser Found. Health Plan of the Mid-Atlantic States, Inc.*, 546 A.d 367, 373 (D.C. 1998). Courts should also consider: (1) "the place where the injury occurred"; (2) "the place where the conduct causing the injury occurred"; (3) "the domicile[], . . . place of incorporation . . . and place of business of the parties"; and (4) "the place where the relationship is centered." *Hercules & Co., Ltd. v. Shama Rest. Grp.*, 566 A.2d 31, 40–41 (D.C. 1989). Here, it is clear that D.C.'s law should govern. Although Nono is a Maryland resident and may have suffered emotional distress in Maryland, D.C. has a strong interest in ensuring that intentional torts are not committed against those employed in D.C, and the entire relationship is centered in Washington, since GWU is located in D.C., all of Nono's work was performed in D.C., and GWU's alleged conduct occurred in D.C.

from accessing GWU, and ultimately terminate him were "extreme, outrageous, and beyond the bounds of decency of this civilized society." Am. Compl. ¶ 145. Even accepting those allegations as factually true, they do not rise above a normal employment decision and certainly do not constitute extreme or outrageous conduct. In his own Amended Complaint, Nono recognizes that he was suspended as a university security officer because he was criminally charged with driving while under the influence of alcohol and thus did not have an active security officer's license. The Amended Complaint also states that he was not terminated until more than a year after his suspension, when he still did not possess a reinstated security officer's license. These actions may have been extremely distressing to Nono but "the law does not, and doubtlessly, should not, impose a general duty of care to avoid causing mental distress." *Harvey v. Strayer College*, 911 F. Supp. 24 27 (D.D.C. 1996). As a result, his IIED claim must be dismissed.

## V. The Court Will Not Grant Leave to Amend the Complaint.

In his opposition memorandum, Nono requests leave to amend "if the court determines that denial of [GWU's] motion is not the appropriate remedy." Pl.'s Opp'n to Mot. to Dismiss at 10. I deny that request. As an initial matter, Nono failed to comply with the rules of this District, which require a party to file a motion to amend the complaint and attach a proposed amended complaint. LCvR 15.1. Here, Nono simply included the request as an alternative argument in his opposition brief. As our Circuit
11

has explained, "a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012). Furthermore, because Nono has not provided a proposed amended complaint and has not indicated that he will be able to plead sufficient facts that would overcome the pleading deficiencies here, amendment would be futile. *See Foman v. Davis,* 371 U.S. 178, 182 (1962). Nono's "request" is therefore denied.

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendant's Partial Motion to Dismiss the Amended Complaint. An Order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge